## BUNGE *v.* COOK.

1. CHATTEL MORTGAGES—DEFAULT—ACQUISITION OF POSSESSION BY MORTGAGEE.

   A mortgagee under a chattel mortgage in default may take possession of the goods if he can do so without breach of the peace, otherwise, he must take by legal process (CL 1948, § 566.402).

2. SAME—DEFAULT—POSSESSION—DEMAND FOR PUBLIC SALE.

   A mortgagee under a chattel mortgage which is in default by mortgagor who has paid less than 50% of the original debt secured by the chattel mortgage, need not hold a public sale unless the mortgagor serves upon the mortgagee, within 10 days after the mortgagee has taken possession, written notice demanding such public sale (CL 1948, § 566.405).

3. SAME—POSSESSION OF MORTGAGEE—NO SALE.

   A mortgagee under a chattel mortgage who obtains possession of goods mortgaged and no public sale is held, may retain the goods as his own property without obligation to account to the mortgagor and the mortgagor is then discharged from all obligation thereunder (CL 1948, § 566.408).

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Chattel Mortgages § 122.
[2] 15 Am Jur 2d, Chattel Mortgages § 219.
[3] 15 Am Jur 2d, Chattel Mortgages §§ 117, 118.
[4, 5] 15 Am Jur 2d, Chattel Mortgages § 121.

4. SAME—POSSESSION OF MORTGAGEE—FORECLOSURE—EXTINCTION OF
   INTEREST OF MORTGAGOR AND OF SECOND MORTGAGEE.

   Mortgagee effected foreclosure of first chattel mortgage where
   mortgagor was in default, and mortgagee acquired possession
   peaceably, less than 50% of the obligation secured by such
   mortgage had been paid, and no public sale was demanded or
   held, hence such mortgagee held title free of any interest pre-
   viously owned by the mortgagor, and of mortgagee under
   second chattel mortgage who knew of other mortgagee's peace-
   able acquisition of possession (CL 1948, §§ 566.402, 566.405,
   566.408).

5. SAME—FORECLOSURE—FRAUD—MERGER.

   Finding of trial court in suit by second chattel mortgagee against
   first chattel mortgagee to enjoin latter from transferring in-
   terest in tavern business whose assets were subject to the 2
   mortgages, that transactions involved effected a foreclosure of
   the first chattel mortgage rather than a merger of the mort-
   gagor's interest with that of the mortgagee and that there was
   no evidence of fraud involved *held*, not error.

Appeal from Wayne; Fitzgerald (Neal), J. Sub-
mitted June 2, 1964. (Calendar No. 3, Docket No.
50,214.) Decided November 2, 1964. Rehearing
denied January 4, 1965.

Bill by Henry C. Bunge against Andrew J. Cook
for accounting in connection with transactions af-
fecting ownership of a bar and rights under chattel
mortgage, and for restraining order and incidental
relief. Nick Ivicek and Helen Ivicek added as parties
defendant. Bill dismissed. Plaintiff appeals. Af-
firmed.

*Levine & Zweig,* for plaintiff.

*Frank Selwa,* for defendant Cook.

*Harold J. Smith,* for defendants Ivicek.

KELLY, J. Plaintiff, Henry C. Bunge, appeals
from the circuit court's decree dismissing his bill

of complaint and from the order denying his motion for rehearing.

Plaintiff originally purchased a tavern business in the city of Coldwater, Branch county, and as a part of the purchase price gave a note and chattel mortgage securing said note. The seller assigned the note and chattel mortgage to a third party, who, in turn, assigned it to defendant Andrew J. Cook. Subsequently, plaintiff entered into an agreement to sell the tavern business to one Mrs. Lois Riley. Defendant Cook demanded that the balance owed by plaintiff be reduced to $10,000 and resecured at the time of the closing of plaintiff's sale to Mrs. Riley.

In September, 1960, Mrs. Riley gave a note in the amount of $10,000 and a first chattel mortgage securing same to defendant Cook. In addition, Mrs. Riley executed an agreement whereby she agreed, upon default in the conditions of payment provided for in the chattel mortgage, to reassign all her interest in the tavern and SDM licenses, upon approval of the Michigan liquor control commission, to Cook for $500. Plaintiff received from Mrs. Riley a note in the amount of $12,000 and a second chattel mortgage securing same, as the balance of the purchase price for the sale.

Both chattel mortgages were recorded in Branch county on September 28, 1960.

Mrs. Riley later defaulted under the terms of both chattel mortgages and in October, 1961, plaintiff Bunge and defendant Cook jointly instituted a chancery foreclosure of both chattel mortgages against Mrs. Riley in the Branch county circuit court.

An order to show cause why a receiver should not be appointed was issued and the hearing on said cause set for October 10, 1961. At this hearing, the judge indicated that he was going to appoint a receiver after the noon recess. However, during this recess Bunge and Cook met with Mrs. Riley. Mrs.

Riley threatened to take her liquor license to Lansing and have it revoked unless she was given $1,000 for her reassignment of the license.

Fearing that Mrs. Riley would carry out her threat, Cook was advised by his lawyer to pay her the $1,000 so that he could gain peaceful and immediate possession of the tavern business. In order to effectuate this hastily arranged noon recess agreement with Mrs. Riley, Cook gave her a check for $1,000, on the reverse side of which was written: "Payment in full for bill of sale and assignment of Lois or Club 105 Tavern & SDM licz. & assignment of licenses."

Defendant Cook also executed the following document:

### "AGREEMENT

"Dated at Coldwater, Michigan, this 10th day of October, 1961.

"I, the undersigned Andrew J. Cook, do hereby agree to assume and pay any and all utility bills, back rental payments or taxes which may be a lien upon the tavern and SDM business operated by Lois Riley and known as the Lois's 105, situated at 105 West Chicago street, Coldwater, Michigan."

In return, Mrs. Riley executed a power of attorney over her interest in the liquor license to Janet Harper, Cook's secretary, and gave up immediate possession of the tavern premises and chattels to Cook.

Cook, Bunge, and Mrs. Riley then filed a stipulation in the Branch county circuit court dismissing plaintiffs' cause of action against defendant Riley, with prejudice.

Cook, defendant in the instant action, immediately took possession of the tavern; paid the rent on the leased premises; paid utility bills owed by Mrs.

Riley; and redecorated and repaired the premises. On several occasions thereafter, Cook and Bunge discussed the possibility of Bunge purchasing Cook's interest in the business, but no agreement was ever reached.

In November, 1961, Cook applied to the Michigan liquor control commission for a transfer of the liquor license from Mrs. Riley to himself. On the form which the transferor must file, Janet Harper, as attorney-in-fact for Mrs. Riley, completed the question regarding the sale price as follows: "Out of court reassignment. $1,000 cash consideration." Cook answered the same question, as transferee, as follows: "Out of court reassignment. $1,000 cash consideration."

The transfer of the license was completed on December 18, 1961, and on December 19, 1961, Cook sought permission to transfer said license to defendants Nick Ivicek and Helen Ivicek. This transfer was completed on January 10, 1962.

On January 12, 1962, plaintiff began this cause of action by filing a bill of complaint against defendant Cook, alleging that the latter was in the process of transferring the business to an unknown third party, which transfer would be fraudulent as to plaintiff Bunge's interest in said business, and asking for the appointment of a receiver and the issuance of an injunction against any such transfer.

By order of February 21, 1962, Nick and Helen Ivicek were appointed receivers during the pendency of this action. On May 11, 1962, Nick and Helen Ivicek, on their petition to intervene, were added as parties defendant, while still maintaining their status as receivers.

Trial was held October 30, 1962. Plaintiff now appeals contending that the transaction between defendant Cook and Mrs. Riley constituted a "sale" of the mortgagor's interest in the tavern business

to defendant Cook, first mortgagee; that such a sale resulted in the merger of the mortgagor's and first mortgagee's interests in the first mortgagee, thereby extinguishing the first mortgage and leaving plaintiff Bunge with the only existing chattel mortgage; that defendant Cook's subsequent sale to defendants Ivicek violated the terms of the chattel mortgage held by plaintiff;[1] that defendant Cook did not obtain possession of the business covered by his first chattel mortgage under the provisions of PA 1939, No 290,[2] providing for statutory foreclosure of chattel mortgages.

Defendant Cook contends that the transaction between Mrs. Riley and himself whereby he obtained voluntary possession of the premises constituted a statutory foreclosure under CL 1948, § 566.402 (Stat Ann 1953 Rev § 26.977[2]); that such foreclosure extinguished plaintiff's second mortgage; that Cook, therefore, transferred a title free of any encumbrances to defendants Ivicek (who claim to be innocent purchasers for value without notice of any creditors' claims to the business); that even if the transaction between Mrs. Riley and himself were held to be a "sale" such did not result in a merger because he had no intent to merge his first chattel mortgage with Mrs. Riley's interest.

Section 2 of the act (CL 1948, § 566.402 [Stat Ann 1953 Rev § 26.977(2)]) provides that whenever the mortgagor is in default under the terms of the mortgage, the mortgagee may take possession of the goods if he can do so without breach of the peace; otherwise, he must take by legal process.

---

[1] "That first part shall not attempt to sell, encumber, assign, dispose of or transfer any interest in said property, or remove the same or any part thereof from the county of Branch, State of Michigan, without the written consent of the holder hereof, or remove or attempt to remove the whole or any part thereof from the said premises."

[2] CL 1948, §§ 566.401–566.412 (Stat Ann 1953 Rev §§ 26.977[1]–26.977[12]).

Section 5 (CL 1948, § 566.405 [Stat Ann 1953 Rev § 26.977(5)]) provides that if the mortgagor has not paid at least 50% of the original debt secured by such mortgage at the time of taking possession of such goods, then the mortgagee need not hold a public sale as provided in section 4, unless the mortgagor serves upon the mortgagee, within 10 days after the mortgagee has taken possession, written notice demanding such public sale.

Section 8 (CL 1948, § 566.408 [Stat Ann 1953 Rev § 26.977(8)]) provides that, "In case there is no sale, the mortgagee may retain the goods as his own property without obligation to account to the mortgagor and the mortgagor shall be discharged from all obligation under such mortgage."

The facts of this case support the conclusion that a foreclosure, as above described, occurred. It cannot be denied that mortgagee Cook went into peaceful possession of the goods secured by his mortgage.

Inasmuch as $8,000 was still owing on the $10,000 first chattel mortgage, and inasmuch as no written demand for a public sale was made within 10 days after defendant Cook took possession, section 8 of the statute (CL 1948, § 566.408 [Stat Ann 1953 Rev § 26.977(8)]) came into effect, with the result that defendant Cook held title to the goods free of any interest previously owned by Mrs. Riley.

Plaintiff's contention that the exchange of documents by Mrs. Riley and defendant Cook amounted to a sale and consequent merger of their interests cannot be sustained. Firstly, plaintiff was cognizant of the situation which defendant Cook found himself in, and gave, at least, tacit agreement to the arrangement which was hastily agreed upon as it was also in plaintiff's best interest to prevent any revocation of the liquor license by Mrs. Riley. Secondly, the notation on the back of the $1,000

check given to Mrs. Riley, while perhaps unfortunate in choice of language, should not be held, as plaintiff contends, to show conclusively that a sale was thereby consummated. The testimony of the lawyer who represented both plaintiff and defendant Cook in their foreclosure suit indicates that such was not the intent of the parties involved and that he had written the notation without defendant Cook's knowledge. Lastly, the testimony indicates that plaintiff hoped to work out a satisfactory financial arrangement with defendant Cook and reinstate himself in the tavern business if defendant Cook could regain possession from Mrs. Riley. After having regained possession, defendant Cook waited approximately two months before concluding that plaintiff could not obtain adequate financing to pay the $13,000 he was asking ($8,000 balance on mortgage, plus approximately $5,000 in repairs, et cetera).

The parties had provided by a separate agreement at the time of executing the first chattel mortgage that in case of default by the mortgagor upon payment of $500 she would reassign the liquor license to mortgagee Cook. The fact that defendant Cook was eventually obliged to pay an additional $500 should not be construed as making said transfer a sale of the mortgagor's interest to the mortgagee. Plaintiff had a more than sufficient opportunity to redeem his interest in the business but was unable or unwilling to do so. He cannot now urge that his security interest has not been extinguished.

The trial court did not err in dismissing plaintiff's bill of complaint and in finding that there was no evidence of fraud and that the transaction entered into between Mrs. Riley and defendant Cook on October 10, 1961, did not merge defendant Cook's

lien with Mrs. Riley's interest leaving plaintiff Bunge as first mortgagee.

Affirmed. Cost to appellees.

KAVANAGH, C. J., and DETHMERS, BLACK, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.